| | | |
|---|---|---|
| JAVONTE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:    3:26-CV-177-TAV-JEM |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Javonte Davis, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") incarcerated at the Morgan County Correctional Complex ("MCCX"), filed a complaint under 42 U.S.C. § 1983 and the doctrine announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[1] [Doc. 1], along with an application for leave to proceed *in forma pauperis* [Doc. 5].  For the reasons set forth below, the Court will **GRANT** Plaintiff's motion [Doc. 5] and **DISMISS** the complaint [Doc. 1] for failure to state a claim.

## I.    MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee.  *See* 28 U.S.C. § 1915(a).  A review of Plaintiff's motion [Doc. 5] demonstrates that he lacks sufficient

---

[1] *Bivens* extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball*, 168 F.3d 856, 863 n. 10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *overruled on other grounds, Castellano v. Fragozo*, 352 F.3d 939, 948–49 & n. 36 (5th Cir. 2003).

financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 5] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language

2

in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

### B. Plaintiff's Relevant Allegations

On or about March 25, 2025, Plaintiff was leaning over the guard rail outside of his cell in 23D pod at MCCX, looking into the day-area of the pod [Doc. 1, pp. 3–4]. Sergeant ("Sgt.") Pappas and Correctional Officer ("CO") Shelly were conducting rounds at the time [*Id.* at 4]. "[C]onfirmed gang members" came onto the top tier and yelled "shower[,]" which usually means that they are "running shower securing for one of their members" [*Id.*]. Once Plaintiff noticed the gang members approaching him, he "back ped[aled]" toward nearby cells [*Id.*]. The gang members walked past the officers and into a cell [*Id.*]. Sgt. Pappas and CO Shelly finished their rounds and went into 23C pod [*Id.*].

Plaintiff was still leaning over the railing in the same area when two of those gang members stood by Plaintiff and asked him to come into the cell to talk [*Id.*]. When Plaintiff told them they could "talk right here" and it became apparent that he would not go into the cell with the gang members, one hit Plaintiff in the face with his hand [*Id.*]. The other gang member "jumped in" and a fight ensued [*Id.* at 4–5]. At some point, Plaintiff realized that he was being stabbed [*Id.* at 5]. Plaintiff "broke free[,]" walked quickly to his cell, shut the cell door, and "hit the call button to notify the staff that something was wrong" [*Id.*].

Plaintiff had his hand pressed over wound, which was rapidly squirting blood [*Id.*]. The involved gang members came to Plaintiff's cell door and tried to persuade him to "patch" himself up and cover up the fight, with one of them stating, "so you the police" [*Id.*]. Plaintiff's cellmate even tried to persuade Plaintiff not to report the incident [*Id.*]. Plaintiff's cellmate "put the blind up" so no one could see inside the cell [*Id.*].

After 5 or 10 minutes, Sgt. Pappas walked back into the pod [*Id.*]. Once he opened Plaintiff's cell door, which was being blocked by Plaintiff's cellmate, Plaintiff walked outside of the cell and got Sgt. Pappas' attention [*Id.*]. Plaintiff told Sgt. Pappas, "You have to walk me out[,] I just got stabbed" [*Id.*]. Sgt. Pappas escorted Plaintiff out of the pod and asked who assaulted him [*Id.*]. Plaintiff told Sgt. Pappas that he had been assaulted by two inmates who were called "Pablo" and "Phat Face" [*Id.* at 5–6]. After they reached "the center core[,]" Sgt. Pappas and CO Shelly began attempting to provide Plaintiff with medical care while they waited on medical to arrive [*Id.* at 6].

After medical arrived, Plaintiff was transported to the infirmary, where he "was patched up" and provided into different clothing while they waited on the ambulance [*Id.*].

4

Plaintiff was first transported to Methodist Hospital and then UT Hospital, where he received surgery [*Id.*].

Plaintiff "had already dealt with or reported a life endangerment on" December 16, 2021, from four confirmed gang members "attempting to come [and] stab [him]" [*Id.* at 7]. Plaintiff reported that incident to various non-Defendant officials and family members and was put on administrative protective custody until October 31, 2024, when he was placed into general population [*Id.*]. This move occurred without Plaintiff's consent, and he did not "have [his] security" [*Id.*]. Thus, Plaintiff was placed "around the same confirmed gang members that put a hit out on [him]" and attempted to "ass[a]ssinate [him] once before" [*Id.*]. Plaintiff "had multiple altercations with these members while in general population[,] [s]ome of which the staff here was aware of" [*Id.*]. Additionally, "some of [Plaintiff's] property came up missing" [*Id.*].

Plaintiff should not be in TDOC custody, because he was falsely convicted and imprisoned "on an invalid plea deal" [*Id.*]. Additionally, "[t]here is no reason for the witness protection program knowing [Plaintiff] did nothing wrong [and his] identity is a part of history [and] a source of income" [*Id.* at 8]. The attack on Plaintiff should not have occurred, especially when agencies and individuals were aware of the threat to Plaintiff [*Id.*].

Aggrieved, Plaintiff filed the instant action against the United States of America, TDOC, President Donald Trump, former Department of Justice Attorney General Pamela Bondi, TDOC Commissioner Frank Strada, Tennessee Governor Bill Lee, Warden Sean Phillips, and all State and Federal Departments whose "job it was to protect" Plaintiff [*Id.*

5

at 3].  Plaintiff seeks monetary relief, security, and for Defendants and the gang members to be "held accountable" [*Id.* at 9].

### C.      Analysis

To state a claim against any Defendant, Plaintiff must establish that a "person" acting "under color of" state or federal law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983 (requiring state action); *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (noting *Bivens* claim requires federal actor).

In his complaint, Plaintiff does not specify whether he is suing the individual Defendants in their official capacities, their personal capacities, or both.  Out of an abundance of caution, the Court presumes he intends to seek relief against Defendants in both their official and individual capacities.

### 1.      Official-Capacity Claims

Plaintiff cannot maintain suit against the United States, because the United States cannot be sued without its consent.  *Block v. North Dakota, ex rel. Bd. of University & School Lands*, 461 U.S. 273, 280 (1983).  Nothing before the Court indicates that the United States has consented to Plaintiff's suit.  Therefore, sovereign immunity precludes Plaintiff's suit against the United States.  And a *Bivens* claim is not authorized against any federal agency.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–86 (1994).

Neither can Plaintiff maintain suit against the TDOC or any State agency, because they are arms of the State of Tennessee.  *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State").  And "a state is not

6

a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).[2]

By seeking relief against any individual Defendant in his/her official capacity, Plaintiff is actually seeking suit against the entity "of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Therefore, Plaintiff's claims against any named United States[3] or Tennessee Defendant in his or her official capacity is likewise impermissible. Accordingly, all official-capacity claims against all Defendants will be **DISMISSED**.

### 2. Individual-Capacity Claims

Constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their

---

[2] The *Ex Parte Young* doctrine allows a prisoner to obtain relief from an ongoing violation of federal law from a state official sued in his or her official capacity. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908). To determine if the exception is applicable, courts "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). Here, Plaintiff does not allege an ongoing violation of federal law, and thus, his claims do not fall within the *Ex Parte Young* exception.

[3] The Court notes that the United States has given limited consent to be sued in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), but any FTCA action must be grounded in state, not federal, law. *See, e.g., Brown v. United States*, 653 F.2d 196, 198–202 (5th Cir. 1981).

subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"). Instead, to state a claim against the named any named Defendant in his or her respective individual capacity, Plaintiff must adequately plead that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Thus, "supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Here, Plaintiff has not alleged any facts suggesting active unconstitutional behavior by any named individual Defendant. And without contentions to support "the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff fails to state a claim which relief may be granted against individual defendants President Trump, former Attorney General Bondi, Commissioner Strada, Governor Lee, or Warden Phillips, and they will be **DISMISSED**. *Iqbal*, 556 U.S. at 678.

### 3. Merits

Additionally, even if specific factual allegations were levied at a viable party, Plaintiff fails to state a cognizable claim. Liberally construing Plaintiff's complaint, the

Court finds it potentially raises three claims: (1) a failure to protect; (2) invalid/illegal sentence; (3) loss of personal property. The Court addresses each in turn.

### a. Failure to Protect

The Eighth Amendment's prohibition on "cruel and unusual punishment" "places duties" on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties require officials to "take reasonable measures to guarantee the safety of" inmates. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527–27 (1984)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, "[f]or a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotations omitted) (alteration in original).

Plaintiff has not set forth facts from which the Court can plausibly infer that any Defendant knew of a specific threat to Plaintiff from gang members that they disregarded. Plaintiff maintains that, based on his prior altercations with gang members, MCCX personnel should not have placed him around those gang members. But he does not allege that he asked to be moved (either out of general population or to a different unit) when he was placed in general population in 2024. Neither does he allege that he made any named Defendant aware of any continued threat to him by any person(s) or group. Moreover,

9

Plaintiff alleges that two officers were in the pod moments before the attack. Plaintiff did not attempt to voice any concern to these officers. And there are otherwise no allegations in the complaint to suggest that prior to the attack, Plaintiff was in objective, physical danger of which any MCCX officer was subjectively aware. *See Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (finding no Eighth Amendment violation for failure to protect where the plaintiff expressed a general concern about his safety but did not identify any particular gang members whom he feared).

The argument that Defendant(s) should have—but did not—realize that another altercation might occur is, at best, negligence. And negligence does not state an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."). Therefore, Plaintiff has failed to set forth sufficient facts to render a failure-to-protect claim plausible, and this claim will be **DISMISSED**.

### b. Invalid/Illegal Sentence

Plaintiff also maintains that he should not be in TDOC custody, as he has been falsely/illegally convicted. But Plaintiff cannot sustain a § 1983 action based on his conviction or sentence unless he can first prove that his conviction or sentence has been reversed or otherwise invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (holding a prisoner's civil rights action "is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or

10

internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration").

Inasmuch as Plaintiff is currently incarcerated on the complained-of charges, it is apparent that his convictions and sentences have not been set aside or invalidated. Accordingly, this claim will be **DISMISSED** as frivolous. *See Harris v. Truesdell*, No. 03-1440, 2003 WL 22435646 (6th Cir. Oct.23, 2003) (affirming district court judgment that *Heck*-barred claim fails to state a claim and is frivolous).

### c.      Loss of Personal Property

Plaintiff's claim that some of his property "came up missing" is too vague and conclusory to state a claim.  But even if Plaintiff's allegations were filled out with additional factual detail, any potential remedy for Plaintiff would lie in state, not federal, law.  The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a government employee deprives an individual of property, provided that the state provides a post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property).  Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201).  Plaintiff has not pled that Tennessee's procedures are inadequate for addressing the alleged wrong, as is necessary to sustain his claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983).  Accordingly, this claim will be **DISMISSED**.

11

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 5] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Even with liberal construction, Plaintiff's complaint fails to state a claim, and this action will be **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE